**STATE of Minnesota, Respondent**

v.

**John Albert ADICKES, Appellant.**

**No. A06–1558.**

Court of Appeals of Minnesota.

Dec. 4, 2007.

Lori Swanson, Attorney General, St. Paul, MN and Thomas N. Kelly, Wright County Attorney, Elizabeth L. Larson, Assistant County Attorney, Buffalo, MN, for respondent.

John M. Stuart, State Public Defender, Paul J. Maravigli, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by HUDSON, Presiding Judge; WILLIS, Judge; and MINGE, Judge.

**O P I N I O N**

HUDSON, Judge.

In this appeal from a conviction of driving in violation of a restricted license, appellant John Adickes argues that he cannot be convicted of violating the restricted-license statute because he did not have a driver's license at all on the date of the

offense. We conclude that because the restricted-license statute prohibits driving in violation of a "restricted driver's license issued to that person," to be convicted under the statute, a person must have a current driver's license. Accordingly, we reverse appellant's conviction.

## FACTS

On June 21, 2005, a Wright County sheriff's deputy saw a farm tractor parked outside a bar in Montrose, Minnesota. Approximately 20 minutes later, the deputy saw the same tractor on the highway, and he proceeded to follow it to a driveway, where he made a traffic stop. The deputy recognized the driver as appellant John Albert Adickes, whose driver's license the deputy knew was cancelled due to past alcohol violations. After appellant gave the deputy his date of birth, the deputy confirmed that appellant's license was cancelled as inimical to public safety and found that he had a restriction on his cancelled license such that any use of drugs or alcohol would invalidate the license. The deputy then smelled alcohol on appellant and performed a preliminary breath test that showed that appellant had a .040 blood-alcohol concentration. Appellant told the deputy he had come directly from a nearby residence where he was tilling the lawn. After the deputy asked appellant why the tractor was in the bar parking lot, appellant explained that he stopped there to use the telephone and drink a couple of beers.

Thereafter, appellant was charged with driving after cancellation of license in violation of Minn.Stat. § 171.24, subd. 5 (2004); and driving in violation of a restricted license in violation of Minn.Stat. § 171.09, subd. 1(b)(1) (2004). Appellant moved to dismiss both charges for lack of probable cause. After a contested omnibus hearing, the district court dismissed the charge of driving after cancellation of license but denied appellant's motion to dismiss the charge of driving in violation of a restricted license. A jury found appellant guilty of driving in violation of a restricted license. This appeal follows.

## ISSUE

Can a person be convicted of violating the restricted-license statute, Minn.Stat. § 171.09, subd. 1(b)(1), if that person did not have a current driver's license at the time of the offense?

## ANALYSIS

Whether a statute has been properly construed is a question of law subject to de novo review. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996). "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (citation and quotation omitted). Statutory construction rules "require that a statute's words and phrases are ... given their plain and ordinary meaning," and when the words of the statute are ambiguous, "the intent of the legislature controls." *State v. Koenig*, 666 N.W.2d 366, 372 (Minn.2003); Minn.Stat. §§ 645.08, 645.16 (2006). But "[p]enal statutes are to be construed strictly so that all reasonable doubt concerning legislative intent is resolved in favor of the defendant." *Koenig*, 666 N.W.2d at 372–73.

Appellant was convicted of driving in violation of a restricted license. Minn. Stat. § 171.09(b)(1) (2004) [1] states:

(b) A person who drives, operates, or is in physical control of a motor vehicle

---

1. The complaint charged appellant with a gross misdemeanor in violation of Minn.Stat.

while in violation of the restrictions imposed in a *restricted driver's license issued to that person* under paragraph (a) is guilty of a crime as follows:

> (1) if the restriction relates to the possession or consumption of alcohol or controlled substances, the person is guilty of a gross misdemeanor.

(Emphasis added.)

■ Here, appellant's driver's license was cancelled as inimical to public safety, a designation that does not allow the Department of Public Safety to issue a driver's license. Minn.Stat. § 171.04, subd. 1(10) (2004). Appellant's position is essentially that in section 171.09, subdivision 1(b), the phrase "restricted driver's license issued to that person" implies that in order to be convicted of a crime under this section, one must actually have a restricted driver's license. Appellant argues that because he does not have a driver's license, he cannot be convicted for violating the statute. We agree.

■ Here, the language of the restricted driver's license statute is clear and unambiguous. *See Owens ex rel. Owens v. Water Gremlin Co.*, 605 N.W.2d 733, 737 (Minn.2000) (holding that when interpreting statutes, courts "look at the language of the statute before us and where that language is clear, ... we must not engage in any further construction"). The plain meaning of the phrase "restricted driver's license issued to that person" is that a person must in fact have a current restricted driver's license in order to violate the restricted-license statute. Minn.Stat.

§ 645.08(1) (2006); *see Baker v. Ploetz,* 616 N.W.2d 263, 268 (Minn.2000) ("Basic rules of statutory construction instruct that words and phrases are to be construed according to their plain and ordinary meaning."). Thus, we will not add to the statute what the legislature has intentionally or inadvertently omitted. *State v. Collins,* 655 N.W.2d 652, 661 (Minn.App.2003), *review denied* (Minn. Mar. 26, 2003).

We are aware that chapter 171 defines "license" broadly to include both the "operator's license" that is "issued or issuable" by the commissioner and the "privilege of any person to drive a motor vehicle whether or not the person holds a valid license." Minn.Stat. § 171.01, subd. 37 (2004). But this provision does not expand the term "license" so broadly as to apply to persons like appellant whose licenses have been cancelled. Our supreme court has long recognized that driving on state highways is a "license or privilege." *Anderson v. Comm'r of Highways,* 267 Minn. 308, 317, 126 N.W.2d 778, 784 (1964). But the term "privilege" in the chapter 171 definition most logically applies to persons driving legally in Minnesota, although without a valid Minnesota driver's license. Thus, it may, for example, refer to nonresidents driving under an out-of-state license, as well as to those exempt from the license requirement. *See* Minn.Stat. §§ 171.03, .15, subd. 1(a). Based on this understanding, the state has not shown that a restriction such as a no-alcohol restriction attaches to an abstract privilege to drive, even assuming appellant could claim such a privilege.

---

§ 171.09, subd. 1(b)(1) (2004), for an incident that occurred on June 21, 2005. The numbering of the statute changed effective July 1, 2005, moving subdivision 1(b)(1) to subdivision 1(d)(1) but leaving the substantive language unchanged. Minn.Stat. § 171.09, subd. 1(d)(1) (Supp. 2005); 2005 Minn. Laws ch. 136, art. 18, § 11, at 1164–65; 2005 Minn. Laws 1st Spec. Sess. ch. 6, art. 3, § 67,

at 3041–42. The parties agreed before the jury trial to amend the complaint to reflect the renumbering of the statute, and the jury convicted appellant under section 171.09, subdivision 1(d)(1). But based on the date of the offense, appellant was appropriately charged under section 171.09, subdivision 1(b)(1) (2004).

Further, we are reluctant to interpret the restricted license statute to impose a criminal penalty on a person who does not have a current restricted driver's license when a plain reading of the statute does not support such a construction. *See State v. Colvin,* 645 N.W.2d 449, 452 (Minn.2002) (stating that when the "construction of a statute is uncertain, a statute may not be interpreted to create criminal offenses that the legislature did not contemplate"). This is especially so when drivers who do not have a current restricted driver's license are already subject to a criminal penalty for driving after suspension, revocation, cancellation, or disqualification. Minn.Stat. § 171.24, subds. 1–4 (2006). While it may be that the legislature intended for violators of continued-abstinence agreements to remain criminally liable for driving in violation of a restricted license even after their restricted licenses are cancelled, that intent is not apparent from a plain reading of the statute.

Therefore, we hold that a person cannot be convicted of violating Minn.Stat. § 171.09, subd. 1(b)(1), unless that person has a current "restricted driver's license issued to that person." Accordingly, we reverse appellant's conviction under Minn. Stat. § 171.09, subd. 1(b)(1). Because we are reversing appellant's conviction, we need not address appellant's other arguments.

## DECISION

To be convicted of violating the restricted-license statute, Minn.Stat. § 171.09, subd. 1(b)(1) (2004), a person must be the holder of a current restricted driver's license.

**Reversed.**