**Richard J. SAARI, Deceased Employee, Relator,**

v.

**Norman W. McFARLAND, et al., Respondents,**

**Wayne Hart, etc., et al., Respondents,**

**State Treasurer, Custodian of the Special Compensation Fund, Respondent.**

No. 81–1065.

Supreme Court of Minnesota.

May 28, 1982.

Robins, Zelle, Larson & Kaplan, John G. Brian, III, and Arnold M. Bellis, St. Paul, for relator.

Ochs, Larson, Klimek & Peterson and Joseph Klimek, Minneapolis, for McFarland, et al.

Gilmore, deLambert, Aafedt, Eustis & Forde, Minneapolis, for Hart, etc., et al.

Warren Spannaus, Atty. Gen., and Thomas Lockhart, Sp. Asst. Atty. Gen., St. Paul, for state treasurer.

YETKA, Justice.

In this workers' compensation proceeding, the law firm of Robins, Zelle, Larson & Kaplan, retained by Paula Yager on behalf of her minor daughter, Leah Yager, sought dependency compensation for the child from the employer of Richard Saari, the child's father. The compensation judge awarded that compensation and awarded the firm $5,000 in attorney fees, the maximum amount permitted under Minn.Stat. § 176.081, subd. 1 (1980). With his client's acquiescence, Arnold M. Bellis, the employee of the firm who had been retained by Paula Yager, petitioned the Workers' Compensation Court of Appeals pursuant to Minn.Stat. § 176.081, subd. 2 (Supp.1981) for a total fee of $15,000, as well as for reimbursement of $588 in costs advanced by the firm. In response, the Court of Appeals issued an order directing the insurer to pay an additional fee of $2,500 out of the awarded dependency compensation. This court is now asked to hold that the award is not a reasonable fee and is arbitrary and unwarranted by the evidence. While the Court of Appeals did not make findings of fact elucidating its application of the factors set forth in Minn.Stat. § 176.081, subd. 5(d) (1980), and, thus, the file does not contain adequate information to justify the fee awarded as required by Minn.Stat. § 176.081, subd. 5(g) (1980), what information is presented strongly suggests that a considerably larger fee was warranted. Consequently, we direct that court to vacate the order under review and to reconsider the petition.

In its order, the Court of Appeals did take cognizance of the "detailed factual data" presented by Mr. Bellis which, the court concluded, revealed that his firm had spent time "in excess of the maximum time normally provided by counsel in a workers' compensation proceeding." The Court of Appeals also added that it had "given consideration to all criteria established in Minn.Stat. § 176.081, subd. 5 (1981) in view of the nature and quantity of time spent by the petitioner's attorney herein." That provision states:

Subd. 5. In the determination of the reasonable value of attorney fees arising out of a claim or proceeding under this chapter, the following principles are to be applied:

(a) The fee in each individual case must be a reasonable one.

(b) There is no set standard fee to be awarded in any workers' compensation matter.

(c) No attorney-client fee contract or arrangement is binding in any workers' compensation matter.

(d) In determining a reasonable attorney fee, important factors to be taken into account are: the amount involved, the time and expense necessary to prepare for trial, the responsibility assumed by counsel, the expertise of counsel in the workers' compensation field, the difficulties of the issues involved, the nature of proof needed to be adduced and the results obtained. The amount of money involved shall not be the controlling factor.

(e) The determination of the fee in each specific workers' compensation mat-

ter must be done with the same care as the determination of any other fact question in the matter.

(f) The determiner of the attorney fee in each matter must ascertain whether or not a retainer fee has been paid to the attorney and if so, the amount of the retainer fee.

(g) The determiner of attorney fees in each case must personally see that the workers' compensation file contains fully adequate information to justify the fee that is determined.

In our review of this order, we give consideration to the same criteria in light of the dual aims of section 176.081, recognized in *In re Award of Attorney's Fees (Rock v. Bloomington School Dist.)*, 269 N.W.2d 360 (Minn.1978) of protecting compensation claimants against excessive legal charges, while, at the same time and of equal importance to the public welfare, assuring their counsel of reasonable compensation for their services.

The petition reveals that Ms. Yager retained Mr. Bellis' firm on March 22, 1977. Employee Richard Saari's death on October 13, 1975, was the consequence of the rupture of a cerebral aneurysm during his work for M & H Elevator Repair near Carroll, Iowa. On September 28, 1975, Ms. Yager gave birth to Leah, who, on October 13, 1976, was adjudged by the Douglas County District Court on stipulated facts to be the employee's daughter.

With the understanding that Norman W. McFarland was the employer, Mr. Bellis filed a dependency claim petition in August 1977 against McFarland and his reputed compensation carrier, Employers Insurance of Wausau. Following a pretrial conference in January 1978, an amended claim petition was filed against McFarland and also against Wayne Hart and State Auto & Casualty Underwriters, Hart's compensation carrier. In response, Employers Insurance of Wausau denied liability, denied a Minnesota contract of hire, and denied insurance coverage. Hart, an Iowa resident, appeared specially and denied both subject matter and personal jurisdiction, making it necessary ultimately for the claimant's attorneys to bring an action in district court pursuant to Minn.Stat. § 176.295 (1980). This was dismissed after State Auto & Casualty agreed to accept liability for any compensation award against Hart.

Both compensation insurers thereafter sought to reopen the paternity issue in the Douglas County District Court. In December 1980, that court ruled that the child's paternity had not been finally determined in the prior proceeding. A jury trial in April 1980 resulted in the adjudication that Leah Yager was the deceased employee's daughter.

A 3-day compensation hearing was finally held in November 1980. Issues relating to the identity of the employer, the existence of compensation insurance, and the compensability of the employee's death were litigated. The compensation judge determined that both McFarland and Hart were employers and that the employee's cerebral aneurysm and resulting death were causally related to his work activities. On appeal by Hart and the compensation carriers, the Court of Appeals affirmed the finding of causal relationship, but determined that only Hart had been the employer, thus awarding dependency compensation only against him and State Auto & Casualty. The award included compensation of $26,927.48, covering the period between the employee's death and the compensation hearing, and provided for continuing benefits in accordance with Minn.Stat. §§ 176.111, 176.645 (1980).

Mr. Bellis' petition requesting an additional fee furnishes considerable factual data bearing on the factors set forth in section 176.081, subd. 5(d). We apply that data to these factors:

1. *The amount involved*: The petition, without contradiction by the Court of Appeals, asserts that the dependency benefits payable until the child reaches 18, assuming an annual adjustment pursuant to Minn. Stat. § 176.645 (1980), will aggregate $156,768 and that such benefits, if payable until the child reaches 21 and remains a full-time student, will be more than $200,000. Section 176.081, subd. 5(d), while expressly

stating that the amount of compensation shall not be the "controlling factor," nevertheless recognizes it among the "important factors" bearing on the determination of a reasonable fee. It is true that the potential award may never be realized, but it would appear to us that the award of $7,500 did not accord proper weight to this factor, particularly in light of the possibility that some portion of a larger fee could have been made payable in annual installments as compensation became due and with the provision that if the obligation to pay dependency compensation were to cease, any unpaid balance due on the fee would be terminated.

2. *The time and expense necessary to prepare for trial*: The records submitted with the petition reveal that the attorneys spent approximately 145 hours and their legal assistants and investigators another 77 hours on the case. Mr. Bellis represents that his standard charge for services over the 4-year period involved ranged from $80 to $105 per hour; that of his associate attorney, John Brian, from $50 to $70 per hour; and that the hourly rate for the work performed by the other employees of the firm varied between $10 and $30 an hour, the total charges for all services being more than $14,000. These records reveal also that the firm advanced over $2,000 for costs required to investigate and establish the dependency claim. Since the firm has not been reimbursed for $588 of these expenses, the fee of $7,500 is, in fact, less than $7,000. Again, in light of these facts, the total compensation awarded does not seem adequate. Mr. Bellis argues persuasively that competent and experienced attorneys cannot afford the financial outlays made in this case if they do not receive reasonable fees for their services.

3–4. *The responsibility assumed by counsel and their expertise*: The responsibility assumed, as Mr. Bellis claims, was particularly significant because of the child's age and long-term need for dependency compensation, which, in his judgment, made settlement of her claim an option

unlikely to be in the child's best interests. With respect to expertise, both Mr. Bellis and his associate have specialized in workers' compensation cases. What weight was given to these factors cannot be determined from the record, but they too suggest that the fee awarded was not reasonable.

5–6. *The difficulties of the issues and the nature of proof needed*: The necessity of proving that the deceased employee was the father of the child protracted and complicated the compensation proceeding. The jurisdictional issues raised by Hart required the commencement of a district court action. While the causal relationship between the employee's work and the rupture of the aneurysm resulting in his death was not extremely complicated from a medical standpoint, the extent of the employee's exertion during his work on October 9, 1975, was a crucial fact question. The attorneys recognized that, kept in contact with an essential witness, and advanced his costs of travel from Florida to testify. More than usual investigative work was also required to determine the underlying facts. Again, while the record does not disclose what weight the Court of Appeals gave these factors, it would appear that they deserved considerable weight.

7. *The results obtained*: As stated, the claimant was awarded dependency compensation and potentially will receive as much as $200,000. The results thus could not have been more favorable, a fact of which the child's mother apparently was aware since she has expressed approval of the requested total fee of $15,000.[1]

We are compelled to conclude that, at least on the record before us, the fee awarded was not adequate but arbitrary and unwarranted by the evidence and that the requested fee was reasonable. We direct that the order under review be vacated and that the Court of Appeals reconsider the petition and again award a fee reflecting the dual aims of section 176.081. We direct also that, in making this fee determi-

---

1. That approval is in no way binding on the Court of Appeals. *See* Minn.Stat. § 176.081, subd. 5(c) (1980). It does indicate, however, that the attorneys' client did not consider the requested fee excessive.

nation, the court set forth findings of fact with respect to the weight it accords each factor enumerated in section 176.081, subd. 5(d), and reflect some relationship between the work performed and the benefits achieved. In our view, these findings will ensure compliance with the directive of subdivision 5(e) that a fee be determined with the same care as the determination of any other fact question and also with the requirement of subdivision 5(g) that the determiner of the attorney fees in each case ensure that the workers' compensation file contains fully adequate information to justify the fee awarded.

Order vacated and matter remanded for reconsideration.