**Marie Delores GREEN, Respondent,**

v.

**BMW OF NORTH AMERICA, LLC, a foreign limited liability company qualified to do business in the State of Minnesota, Appellant.**

No. A11–0581.

Supreme Court of Minnesota.

Feb. 13, 2013.

Todd E. Gadtke, Daniel J. Brennan, Gadtke & Brennan, P.A., Maple Grove, MN, for respondent.

Katherine A. McBride, Lenae M. Pederson, Meagher & Geer, P.L.L.P., Minneapolis, MN; and Timothy V. Hoffman, Sanchez Daniels Hoffman LLP, Chicago, IL, for appellant.

Julian C. Janes, Gislason, Martin, Varpness & Janes, P.A., Edina, MN, for amicus curiae Chrysler Group, LLC.

## OPINION

GILDEA, Chief Justice.

This case involves an award of $221,499 in attorney fees to respondent Marie Delores Green, a consumer who was successful on her claim against appellant BMW of North America, LLC, under Minnesota's lemon law, Minn.Stat. § 325F.665 (2012).[1] After a bench trial, the district court issued a verdict in favor of Green and awarded her $25,157 in damages. Green moved for an award of attorney fees and litigation costs. The district court granted Green's motion and awarded a total of $229,064 in attorney fees and litigation costs. In reaching its conclusion on attorney fees, the court determined that "it is improper to compare the amount of reasonable legal fees to the amount of a recovery in determining the proper fee award." A divided panel of the court of appeals affirmed. Because the amount involved in the litigation and the results obtained are relevant factors that the dis-

---

1. The parties refer to Minn.Stat. § 325F.665 as Minnesota's lemon law. Other courts have also used this term to refer to section 325.665. *See, e.g., Sipe v. Workhorse Custom Chassis, LLC,* 572 F.3d 525, 529 (8th Cir. 2009); *Highway Sales, Inc. v. Blue Bird Corp.,* 559 F.3d 782, 790 (8th Cir.2009); *Pfeiffer v. Ford Motor Co.,* 517 N.W.2d 76, 79 (Minn. App.1994). For purposes of this opinion, we likewise describe Minn.Stat. § 325F.665 as Minnesota's lemon law.

trict court is to consider in awarding attorney fees under Minnesota's lemon law, we reverse.

This action arises from Green's lease of a vehicle from BMW. Green claimed that the leased vehicle was defective and brought suit against BMW. In addition to state law warranty claims, Green alleged that BMW violated Minnesota's lemon law, Minn.Stat. § 325F.665, and the federal Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301–2312 (2006). The total cost of Green's lease was $27,803, and in her prayer for relief, Green asked for damages "including but not limited to the amount of Fifty Thousand Dollars ($50,000), plus incidental and consequential damages, [and] loss of use damages."

The district court conducted a 4–day bench trial on Green's claims. Following the trial, the court issued a verdict in favor of Green on all claims. The court entered judgment in the amount of $25,157, awarding Green, as directed by Minn.Stat. § 325F.665, subd. 4, a full refund of the vehicle's lease price minus a 10 percent statutory allowance for reasonable use plus costs Green had incurred in renting a substitute vehicle. The court based the damages award on Green's claim under Minnesota's lemon law, noting that "[b]ecause the Plaintiff is fully compensated under the damages she has been awarded under Minn.Stat. § 325F.665, the Court awards her no additional damages" for the warranty claims.

After trial, Green brought a motion for an award of attorney fees and litigation costs pursuant to Minnesota's lemon law and the Magnuson–Moss Warranty Act, which both allow successful consumer-plaintiffs to recover costs, including reasonable attorney fees. In her motion, Green sought $231,101 in attorney fees, which included 605.8 attorney hours billed at $350 or $375 per hour, and 10.4 parale-

gal hours billed at $165 per hour. She also sought $7,565 in litigation costs.

BMW opposed Green's motion. BMW argued that the hourly rates charged by Green's attorneys were unreasonable. BMW also argued that the hours billed were unreasonable in light of all of the relevant circumstances, including the amount involved in the litigation. Specifically, BMW argued that the two attorneys on Green's case had both billed time for performing the same tasks, that the attorneys performed numerous tasks that were better suited to the skills of a paralegal, and that many of the billing entries were too vague to enable the court to determine whether the fees were reasonable. In support of its contentions, BMW highlighted, for example, the unreasonableness of two partners billing 110.3 hours for a total cost of $40,015 to prepare proposed findings of fact and conclusions of law for the district court. BMW also attached an addendum in response to Green's motion, identifying each charge with which it took issue and ultimately suggesting that an award in the range of $75,000 would be reasonable.

The district court awarded Green's counsel $221,499 in attorney fees and $7,565 in litigation costs. In making this award, the court reduced the hourly rate for the 10.4 paralegal hours from $165 to $80, but otherwise made no reductions in either the hourly rates or the number of hours billed. The court determined, based on affidavits submitted by both parties, that the $350 and $375 hourly rates of Green's counsel were reasonable and in line with what other similar lawyers in the community charge for similar consumer protection litigation. The court also found that the time expended by Green's counsel "was reasonable and necessary according to local, experienced and independent counsel," and after carefully reviewing the materials submitted could not

"conclude that the amount of time spent on the described tasks was unreasonable." In determining that the time spent was reasonable, the court did not address the arguments made by BMW in response to Green's motion, concluding that "[d]efendant offered only the conclusory assertion that the billings are excessive without explaining why." Finally, the court concluded that it was improper to consider the amount at issue in the litigation "because the purpose of the fee shifting provision is to provide an incentive for attorneys to take these types of cases." According to the court, "Without the fee-shifting provision, it would be cost-prohibitive for attorneys to take cases where the time and money expended trying a case would be much more than the recovery." Because the court awarded Green attorney fees under Minnesota's lemon law, it decided that while entitled to "reasonable legal fees" under the Magnuson–Moss Warranty Act, Green "has recovered these reasonable fees under the Minnesota lemon law and the court does not allow double recovery."

BMW appealed a number of the district court's findings of fact and conclusions of law, including the attorney fees award. The court of appeals unanimously affirmed the district court with respect to BMW's liability for the defective vehicle. *Green v. BMW of N. Am., LLC,* No. A11–581, 2011 WL 6306657, at *4–6 (Minn.App. Dec. 19, 2011). The court of appeals was divided, however, on the issue of attorney fees. The majority concluded that the district court had not abused its discretion in awarding attorney fees. *Id.* at *7–8. And, according to the majority, the district

court properly declined to consider the amount involved in the litigation in awarding attorney fees. *Id.* at *8. While the majority determined that "reasonableness implies a certain degree of proportionality," it rejected BMW's argument that "a district court should consider the *amount* involved in the litigation when awarding attorney fees." *Id.*

On the issue of attorney fees, the dissent stated that "Green's attorneys did not exercise 'billing judgment'" and that "the number of hours for which fees are claimed is unreasonable in light of the nature and limited value of the case." *Id.* at *9 (Johnson, C.J., concurring in part, dissenting in part). The dissent reasoned that "Minnesota law requires district courts to consider 'all relevant circumstances,'" which includes "the relationship between the amount of attorney fees claimed and the amount of the claimant's damages." *Id.* (quoting *Milner v. Farmers Ins. Exch.,* 748 N.W.2d 608, 621 (Minn. 2008)). Therefore, the dissent concluded that "the district court erred when determining the amount of the award of attorney fees." *Id.* at *11.

 We granted BMW's petition for review on the issue of whether courts are to consider the relationship between the amount of attorney fees claimed and the amount of the claimant's damages when determining a statutorily reasonable fee award.[2] We "review an award of attorney fees for an abuse of discretion." *Milner,* 748 N.W.2d at 620; *accord Ed Herman & Sons v. Russell,* 535 N.W.2d 803, 808 (Minn.1995). An abuse of discretion occurs "when a district court errs as a mat-

---

**2.** BMW also argues that the litigation costs were unreasonable for a number of reasons. But BMW did not appeal the reasonableness of the litigation costs awarded, and BMW did not raise this issue in its petition for review. Therefore, we do not address the district

court's award of litigation costs. *State v. Koppi,* 798 N.W.2d 358, 367 (Minn.2011) ("Generally, we do not address issues the petitioner fails to raise in a petition for further review.").

ter of law in applying improper standards in an award of fees." *Jorstad v. IDS Realty Trust*, 643 F.2d 1305, 1312 (8th Cir.1981).

## I.

■ The district court awarded attorney fees to Green under Minnesota's lemon law, which protects consumers of new motor vehicles that have defects or conditions that substantially impair the use or market value of the motor vehicle. Minn. Stat. § 325F.665, subd. 3. Under the statute, consumers "may bring a civil action to enforce" Minnesota's lemon law and "recover costs and disbursements, including reasonable attorney's fees incurred in the civil action." Minn.Stat. § 325F.665, subd. 9.[3] We have not previously determined the proper approach for assessing the reasonableness of attorney fees under Minnesota's lemon law.

■ Generally, Minnesota courts have used the lodestar method for determining the reasonableness of statutory attorney fees. *See Specialized Tours, Inc. v. Ha-*

*gen*, 392 N.W.2d 520, 542 (Minn.1986) (adopting the Supreme Court's lodestar approach to reasonable attorney fees under civil rights statutes as a "sensible and fair approach" to determine reasonable attorney fees under the Minnesota Securities Act (citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The lodestar method "requires the court to determine the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Milner*, 748 N.W.2d at 621 (citations omitted) (internal quotation marks omitted). We have consistently followed the lodestar method to determine reasonable attorney fees in numerous statutory settings. *See, e.g., id.* at 620–24 (Minnesota Fair Labor Standards Act); *Bucko v. First Minn. Sav. Bank, F.B.S.*, 471 N.W.2d 95, 99 (Minn.1991) (statute prohibiting employee polygraph testing); *Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 628–30 (Minn.1988) (Minnesota Human Rights Act); *Specialized Tours*, 392 N.W.2d at 542 (Minnesota

**3.** Attorney fees are also recoverable under the Magnuson–Moss Warranty Act, the federal law governing warranties on consumer products, which provides, in relevant part:

If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

15 U.S.C. § 2310(d)(2). Green argues that this statute, by including the phrase "based on actual time expended," provides for a greater recovery of attorney fees than those statutes, like Minnesota's lemon law, which are couched in terms of "reasonable attorney's fees," Minn.Stat. § 325F.665, subd. 9.

In other words, Green contends that any time expended by attorneys under the federal act may be reimbursed without regard to reasonableness. Green's argument is unpersuasive. First, contrary to Green's assertion, the language of the federal statute is not at issue in this case because the district court specifically declined to award attorney fees under the federal act, determining instead that Green had been fully compensated under Minnesota's lemon law. Second, even if the federal statute were at issue, our analysis of attorney fees would be the same as the analysis under Minnesota's lemon law, because the federal statute specifically requires that "attorneys' fees based on actual time expended" be *"reasonably* incurred." 15 U.S.C. § 2310(d)(2) (emphasis added). Because reasonableness remains a consideration under the federal statute, there is no basis to conclude that the outcome of this case would be different if the district court had analyzed attorney fees under the federal statute instead of Minn.Stat. § 325F.665, subd. 9.

Securities Act). The parties do not dispute that the lodestar method controls the determination of attorney fees in this case. And our precedent applying the lodestar method to diverse statutes provides strong support that the lodestar method is also appropriate in the context of Minnesota's lemon law.

The attorney fees provision in Minnesota's lemon law, like that in the Magnuson-Moss Warranty Act, apparently " 'is designed to make it economically feasible to pursue consumer rights involving inexpensive consumer products.' " *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 256 n. 7 (7th Cir.1988) (quoting S.Rep. No. 986, at 21 (1971)). We have applied the lodestar method to other statutory grants of attorney fees with similar purposes, such as the Minnesota Human Rights Act, which allows for the recovery of attorney fees to provide Minnesota citizens with the means to pursue legal remedies that may otherwise be unavailable. *See Sigurdson v. Isanti Cnty.*, 386 N.W.2d 715, 722 (Minn. 1986) (explaining that the statutory allowance of attorney fees in the Minnesota Human Rights Act "was to encourage victims of discrimination to bring suit, particularly where the relief sought is not a large money judgment, and to make legal counsel available in these cases"); *cf. Quam v. State*, 391 N.W.2d 803, 807 n. 4 (Minn.1986) (noting that the attorney fees provisions of the Workers' Compensation Act "are intended to encourage attorneys to represent injured workers"). The parties have identified nothing about the public policy underlying the attorney fees provision in Minnesota's lemon law that would suggest that we should craft a new test, or apply the lodestar analysis differently in

this context than we have done in other statutory contexts.[4]

For all of these reasons, we hold that when assessing requests for attorney fees under Minnesota's lemon law, district courts should adhere to the lodestar method.

## II.

Under the lodestar method, a court must first determine the number of hours reasonably expended on the litigation and then multiply those hours by a reasonable hourly rate. *Anderson*, 417 N.W.2d at 628 (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933). In determining "the reasonable value of the legal services," the district court should consider "all relevant circumstances." *State v. Paulson*, 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971). The circumstances that inform a court's "determin[ation of] reasonableness include 'the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client.' " *Milner*, 748 N.W.2d at 621 (quoting *Paulson*, 290 Minn. at 373, 188 N.W.2d at 426); *see also Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 ("The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward.").

BMW argues that the district court erred when it refused to consider the over-

4. Courts from other jurisdictions have similarly followed the lodestar approach in determining reasonable attorney fees under lemon laws. *See, e.g., McClelland v. Hyundai Motor Am.*, 851 F.Supp. 677, 678–79 (E.D.Pa.1994); *Chrysler Corp. v. Weinstein*, 522 So.2d 894, 896 (Fla.Dist.Ct.App.1988); *Daimlerchrysler Corp. v. Karman*, 5 Misc.3d 567, 782 N.Y.S.2d 343, 345–48 (Sup.Ct.2004).

all amount involved in the litigation—$25,157—in determining whether the awarded attorney fees—$221,499—were reasonable. BMW urges this court to clarify, under its formulation of the lodestar analysis, that the amount involved in litigation is a relevant circumstance that the district court must consider in awarding reasonable attorney fees. Green argues, on the other hand, that it is inappropriate for the district court to consider the amount involved in litigation in awarding reasonable attorney fees. In arguing against a "dollar value proportionality rule," Green contends that the only inquiry a district court may make related to the amount involved is "whether the prevailing movant was successful as measured either by her success in proportion to the number of claims brought, or by reference to the remedy available at law, but not by the value of the claim." Moreover, Green argues that if courts consider the amount involved in litigation, consumers "seeking to vindicate their rights relative" to inexpensive consumer products will be unable to retain attorneys to represent their interests.[5]

We have consistently held that, in determining an award of reasonable attorney fees, a district court is to consider all relevant circumstances. *See Paulson*, 290 Minn. at 373, 188 N.W.2d at 426. These circumstances specifically include "the amount involved and the results obtained." *Milner*, 748 N.W.2d at 621 (citation omitted) (internal quotation marks omitted); *see also Watkins v. Bigelow*, 96 Minn. 53, 56, 104 N.W. 683, 684 (1905) (explaining

that the district court in awarding attorney fees out of a probate estate "properly took into consideration," in addition to other factors, "the amount of money involved"). The "amount involved" language has not, as Green suggests, been confined to a consideration of the amount involved only as it relates to a prevailing party's percentage of success. Rather, we have looked to both the amount involved *and* the results obtained.

In *Asp v. O'Brien*, for example, the district court awarded the plaintiff $2,400 in attorney fees under Minnesota's mechanic's lien statutes after the plaintiff recovered slightly more than $4,000 on a mechanic's lien claim. 277 N.W.2d 382, 384 (Minn.1979). In reducing the award of attorney fees to $1,000, we explained that "we are not inclined to allow the award of the full amount, particularly where the amount of the lien recovered is small in comparison to the attorney's fees assessed." *Id.* at 385. *Asp* stands for the proposition that the amount at issue is a relevant consideration in the ultimate determination of the reasonableness of attorney fees.

■ Moreover, we have looked to the amount involved in litigation in increasing an award of reasonable attorney fees. In a workers' compensation case, we concluded that the workers' compensation court erred when it gave no weight to the amount of benefits involved in the litigation in awarding statutory attorney fees. *In re Petition of Attorney Fees*, 350 N.W.2d 373, 375–76 (Minn.1984).[6] We ex-

---

5. Green filed a motion seeking to strike references in BMW's brief to "four unrelated district court attorney fee awards that were not before the district court in deciding the subject fee award." Green argues that because these district court orders have "no precedential value," they "serve no legitimate role in the determinations to be reached by this Court." BMW cites these orders as examples

of what it contends are inconsistent rulings on the issues raised in this case. That the district court orders lack precedential value does not require that they be stricken from the brief; rather, it merely informs the weight we will give them. Accordingly, we deny Green's motion to strike.

6. In *In re Petition of Attorney Fees*, the workers' compensation statute at issue incorporat-

plained that while "the amount involved is not controlling, it is nevertheless important since it bears on the extent of the responsibility the attorney has assumed." *Id.* at 376. Based in part on consideration of the $712,000 benefit award, we increased the award of attorney fees. *Id.* at 375–76; *see also Saari v. McFarland,* 319 N.W.2d 706, 708–09 (Minn.1982) (determining that the workers' compensation court "did not accord proper weight" to the large amount of benefits awarded when determining the appropriate award of reasonable attorney fees).[7]

Contrary to Green's suggestion, our direction to lower courts to consider the amount involved and the results obtained when awarding reasonable attorney fees does not amount to a "dollar value proportionality rule." The amount involved is merely one factor, among a host of others, that the district court is to consider in awarding reasonable attorney fees. *See City of Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986) (concluding that in the civil rights context, fee awards should not "necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers," but that "[t]he amount of damages a plaintiff

recovers is *certainly relevant* to the amount of attorney's fees to be awarded" (emphasis added)). Green cites to numerous cases that have rejected strict proportionality between damages awarded and attorney fees sought, but those cases are inapposite because BMW does not argue for, and our jurisprudence does not support, such a rule.

 It is true that a cap on fees or an examination of the proportionality between the amount of recovery and the fees expended could hamper the ability of consumers to vindicate their rights relative to inexpensive products. But ignoring, as the district court did, the amount involved in the litigation contravenes the principles that underlie statutory attorney fees provisions. In explaining the lodestar method, the Supreme Court has explicitly cautioned that statutory attorney fees should be "adequate to attract competent counsel," but should "not produce windfalls to attorneys." *Hensley,* 461 U.S. at 430 n. 4, 103 S.Ct. 1933. The Court explained, "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* are also not properly billed to one's *adversary* pursu-

---

ed the factors laid out by our court in *Paulson* and expressly directed the court to examine "the amount involved" in determining reasonable fees. 350 N.W.2d at 375. Because the language of the statute is the same as our case law directing district courts to consider the amount involved, our reasoning from *In re Petition of Attorney Fees* is persuasive in this case, even though the lemon law statute does not specifically direct district courts to look to the amount involved.

7. Our jurisprudence regarding the relevance of the amount involved in litigation is in accord with other courts that have similarly determined that one aspect of reasonableness in the context of awarding statutory attorney fees is "whether the requested fee award when based upon hours allegedly expended exceeds the amount that could ever be rea-

sonable" given the nature of a case. *Gumbhir v. Curators of the Univ. of Mo.,* 157 F.3d 1141, 1146–47 (8th Cir.1998) (reducing an attorney fees request in a Title VII retaliation case of over $450,000 to $46,750, concluding that because "counsel knew from the outset that this case involved only a relatively modest claim for compensatory damages, perhaps $50,000 to $75,000 at most," it was unreasonable for the "attorney to run up a bill of $450,000 to $500,000 to litigate this type of damage claim"); *see also Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir.1983) (explaining in an ERISA case that "there must be a correlation between the 'hours worked' and 'the total recovery'" and that "the trial court must consider the relationship between the fee award and the amount of recovery").

ant to statutory authority." *Id.* at 434, 103 S.Ct. 1933 (citation omitted) (internal quotation marks omitted). District courts, therefore, are directed to exclude from fee awards "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* Because billing judgment is necessarily related to the merits of the case and the amount at issue in a consumer protection case, divorcing an award of attorney fees entirely from the amount at stake in the litigation would relieve attorneys from the need to exercise such judgment.

 Our precedent is clear that the amount involved and the results obtained are among the relevant considerations in determining reasonable attorney fees under the lodestar method. Because the district court failed to consider these factors in awarding attorney fees under Minnesota's lemon law, we hold that the district court abused its discretion.[8]

Reversed and remanded for proceedings consistent with this opinion.

---

8. BMW also argues that the district court abused its discretion when it awarded attorney fees based on every hour requested by Green's attorneys without analyzing whether these hours, and the rates at which they were billed, were reasonable. BMW did not raise this issue in its petition for review and so the question is not properly before us. *See Koppi,* 798 N.W.2d at 366–67 (explaining that matters not raised in a petition for review are generally waived and therefore not consid-

ered). But on remand, because BMW made numerous and specific objections to the reasonableness of the claimed attorney fees and the hourly rates billed by Green's attorneys, the district court " 'must not only make a decision on the claim but provide a 'concise but clear explanation of its reasons for the fee award.' " *Anderson,* 417 N.W.2d at 629–30 (quoting *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933).